NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JOSEPH PROCACCI | **Hon. Dennis M. Cavanaugh** |
| Plaintiff, | **OPINION** |
| v. | Civil Action No. 06-cv-3517 (DMC) |
| MICHAEL ASTRUE, Commissioner of Social Security | |
| Defendant. | |

<u>DENNIS M. CAVANAUGH, U.S.D.J.</u>:

      This matter comes before the Court upon Plaintiff Joseph Procacci's ("Plaintiff") appeal from the Commissioner of the Social Security Administration's ("Commissioner") final decision denying his request for Disability Insurance Benefits ("DIB"). The Court has jurisdiction to review this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) and decides this matter without oral argument. <u>See</u> Fed. R. Civ. P. 78. The record provides substantial evidence supporting the Commissioner's decision that Plaintiff was not disabled. Accordingly, the Commissioner's decision is affirmed.

**I.   BACKGROUND**

    **A.   Procedural Background**

      Plaintiff filed for DIB on June 24, 1997. (Record ("R.") 46-49.) The claim was denied initially and upon reconsideration. (R. 50, 59-70.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") and a hearing was held before ALJ Dennis O'Leary on March 19,1999. (R. 82, 21.) On May 17, 1999, the ALJ O'Leary found that Plaintiff was not disabled. (R.

299-307.) On February 14, 2001, the Appeals Council vacated the decision and remanded the case. (R. 318-21.)

On May 18, 2001, a post-remand hearing was held before ALJ O'Leary. (R. 709.) On June 29, 2001, the ALJ again found that Plaintiff was not disabled. (R. 344.) On August 17, 2001, Plaintiff requested that the Appeals Council review the ALJ's June 29, 2001 decision. (R. 347.)

On February 8, 2002, Plaintiff filed a second claim for DIB. (R. 646.) The claim was denied initially and upon reconsideration. (R. 347.) On August 29, 2003, a hearing was held before ALJ Dean Determan and, on May 30, 2003, after evaluation, found that Plaintiff was not disabled. (R. 643-51.) On July 17, 2003, Plaintiff requested that the Appeals Council review the ALJ's May 30, 2003 decision. The Appeals Council vacated both of the ALJ's decisions, consolidated both claims, and remanded the consolidated claim for further proceedings. (R. 360-63.)

On May 5, 2004, a post-remand hearing of the consolidated claims was held before ALJ Dean Determan. (R. 762-78.) The ALJ issued a decision, on July 14, 2004, finding that Plaintiff was not disabled. (R. 18-45.) On June 6, 2006, the Appeals Counsel denied Plaintiff's request for review of the ALJ's decision. At that time ALJ Determan's decision became the final decision of the Commissioner. (R. 13-17.)   Plaintiff thereafter commenced this action challenging the Commissioner's final decision.

     **B.**    **Factual Background**

Plaintiff, Joseph Procacci, is a 44 year-old male born on June 1, 1962. (R. 85.) He is a high school graduate and attended Middlesex County College for less than a year. (R. 23.) As of 1996, Plaintiff last worked as a telephone operator for Verizon for three years. (R. 85.) Plaintiff's job duties required him to sit and talk on the telephone throughout the day, and did not require him to

lift or carry any objects which weighed more than ten pounds. (R. 178.) This job did not allow for him to change positions during the course of the day as much as he desired. (R. 178.) On a typical day he would sit for two hours, break for fifteen minutes, stand for two hours, have lunch, then repeat; however, Plaintiff did not always have the option to change positions frequently because there were fewer standing position units available. (R. 178.)

On January 23, 1995, Plaintiff saw his treating physician, Dr. Shafi for elbow pain. (R. 482.) Dr. Shafi diagnosed bilateral humeral epicondylitis and administered medication to treat the pain through March 23, 1995. (R. 482.) On March 23, 1995, an attending physician found Plaintiff's epicondylitis had resolved. (R. 163.)

On January 17, 1996, Plaintiff reported to a hospital emergency room for complaints of lower back pain that radiated to the right lower extremity. (R. 179-83.) Upon examination, Dr. Goldberg diagnosed back strain/sprain. (R. 179.) The following day, Plaintiff reported to the Lyons Veteran's Administration Hospital with complaints of lower back pain, as well as tendinitis of the left elbow. (R. 210-215.) A CT scan of the lumbar spine revealed a herniated disc with extensive arthritic disease and spinal stenosis. (R. 215.) On January 18, 1996, Plaintiff saw Dr. Shafi for complaints of lower back pain that radiated to his right lower extremity. (R. 231.) Dr. Shafi recorded that Plaintiff had marked spasm of the right lumbar spine and hypesthesia of the right thigh and calf. (R. 231.)

On February 13, 1996, Plaintiff saw Dr. Stanley Stellar, a neurologist, for a consultative examination. (R. 158-88.) Dr. Stellar noted that the MRI taken of Plaintiff revealed small and large herniated discs. (R. 186.) Dr. Stellar also observed that Plaintiff's upper and lower extremities had full motor strength, and that his lumbar spine had limited range of motion. (R. 186.) The doctor

recommended back surgery and opined that Plaintiff was temporarily disabled pending the outcome of the surgery. (R. 187-88.) From March 22 through 25, 1996, Plaintiff was hospitalized for complaints of lower back pain and on March 22, Dr. Shafi performed a lumbar laminectomy. (R. 196-97.) From March 28 through April 25, 1996, Dr. Shafi consistently observed Plaintiff's condition and advised Plaintiff to continue strength training but to avoid lifting heavy objects, bending, and playing golf. (R. 242, 228.)

Plaintiff underwent back surgery in January 1996. (R. 23.) He was only able to work half days upon returning in the spring of 1996, and as a result was fired. (R. 23.) Thereafter, Plaintiff received unemployment insurance benefits for the next six months. (R. 737.)

On August 27, 1997, Dr. Betty Vekhnis, a consultative orthopedist, examined Plaintiff at the request of the State Agency. (R. 216-20.) Upon examination, Dr. Vekhnis observed that Plaintiff was moderately obese, had full range of motion of the cervical spine with no tenderness, and had limited range of motion of his lumbar spine which exhibited significant right-sided muscle spasms. (R. 217-18.) Dr. Vekhnis also observed that his pain was aggravated by activities such as heavy lifting and frequent bending. (R. 217-218.)

On September 9, 1997, Dr. Robert T. Walsh, a State Agency medical consultant, reviewed the evidence on record and assessed that Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently. (R. 52.) During the course of an eight hour work day, Plaintiff could sit, stand, and walk for about six hours each, with occasional postural limitations. (R. 52.) On February 5, 1998, a State Agency medical consultant reviewed the September 9, 1997 record of Dr. Walsh and affirmed Dr. Walsh's assessment. (R. 58.)

On January 23, 1998, Plaintiff went to the Department of Veterans Affairs with complaints of chronic lower back pain. (R. 52.) An attending physician observed that Plaintiff walked with assistance from a cane and had limited range of motion of his lumbar spine. (R. 52.)

On June 25, 1998, Plaintiff's physical therapist noted that Plaintiff had been inconsistent in attending physical therapy. (R. 251.) Upon examination, Plaintiff exhibited full lumbar spine extension and full muscle strength. (R. 251.)

On August 17, 1998, the Veteran's Affairs' neurology department saw Plaintiff for a follow up examination and electrodiagnostic test. (R. 293.) Plaintiff complained of pain in his skull that was aggravated by wearing his motorcycle helmet. (R. 293.) Upon examination, electrodiagnostic testing revealed no evidence of lumbar radiculopathy, cervical radiculopathy, or peripheral neuropathy. (R. 293, 434-36.)

On December 8, 1998, Dr. Ronald Bagner, a consultative physician, examined Plaintiff at the request of the State Agency. (R. 276-78.) Upon examination, Dr. Bagner observed that Plaintiff walked with a cane, had full range of motion of his bilateral upper and lower extremities, and had normal motor strength, reflexes, and sensations. (R. 277.) Plaintiff's lumbar spine had limited range of motion. (R. 277.)

In a letter dated December 14, 1998, Dr. Shafi opined that Plaintiff was disabled. (R. 290.) Dr. Shafi noted that Plaintiff had persistent symptoms in both lower extremities with marked spasms, and an MRI scan revealed a marked epidural fibrosis with mild disk herniation. (R. 290.)

On January 11, 2000, the Veterans Affairs determined that Plaintiff was partially disabled due to a degenerative disc disease of the lumbosacral spine. (R. 424.)

On October 24, 2000, Dr. Perry Leong, an internist, completed a medical questionnaire at the request of the State Agency. (R. 485-89.) Dr. Leong noted that he had examined Plaintiff in August 1997, December 1998, and August 2000. (R. 469.) Upon examination, Dr. Leong observed that Plaintiff was obese. (R. 469.)

On January 18, 2001, Dr. Salvatore Milazzo, a consultative orthopedist, examined Plaintiff at the request of the State Agency. (R. 485-89.) Upon examination, Dr. Milazzo observed that Plaintiff weighed 320 pounds and walked with a cane. (R. 486.) In addition, Plaintiff's cervical spine had a functional range of motion with pain at full flexion, his thoracic and lumbar spines each had a limited range of motion, and his upper extremities had full muscle strength. (R. 487.)

On February 1, 2001, a State Agency medical consultant reviewed the evidence of the record and assessed Plaintiff. (R. 494.) It was noted that Plaintiff could occasionally lift and/or carry ten pounds and during the course of an eight hour-hour workday, he could sit for about six hours, and stand and/or walk for about two hours. (R. 494.)

On May 18, 2001, Rocco Meola ("Meola"), an impartial vocational expert, testified at Plaintiff's hearing. (R. 741.) Meola opined that an individual who required a sit/stand option could perform Plaintiff's past relevant work as an accounts receivable clerk as long as he could stand next to the desk while talking on the phone. (R. 740.) Mr Meola stated that a hypothetical person of Plaintiff's age, educational background, and work history, who was limited to sedentary work and required the option to sit or stand for no more than one hour at a time could perform other jobs which exist in the national and local economy. (R. 741.) However, Mr. Meola added that for "the same individual who was restricted to sitting or standing for half-hour intervals as opposed to hour

intervals the occupational base would be reduced to nil." (R. 741.)

At the May 5, 2004 hearing, Plaintiff stated that he occasionally mowed the lawn, cleaned the house and windows, but would frequently rest due to ongoing pain in his knees. (R. 768.)

In a decision issued on July 14, 2004, ALJ Determan concluded that Plaintiff was not disabled. (R. 45.) In addition, the ALJ made the following findings:

1. The claimant meets the nondisablilty requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through September 30, 2001.
2. The claimant has not engaged in substantial gainful activity since May 16, 1996, his alleged onset date.
3. The claimant's lower back pain status post-surgery, pain in the knees, obesity and bilateral epicondylitis are considered "severe" based on the requirements in the Regulations 20 C.F.R. 404.1520(c). The record does not establish the existence is a severe cervical spine impairment on or before September 30, 2001, the date last insured. The claimant's depression has no more than a minimal effect on his ability to perform basic work activities and is therefore non-severe.
4. The claimant's medically determinable impairments do not meet or medically equal any of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
5. The claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.
6. The claimant retains the residual functional capacity to perform sedentary work. The claimant needs to alternate between sitting and standing every hour.
7. The claimant's past relevant work as an accounts receivable clerk did not require the performance of work-related activities precluded by his residual functional capacity (20 C.F.R. 404.1565).
8. The claimant's medically determinable impairments did not prevent him from performing his past relevant work on or before September 30, 2001, his date last insured (20 C.F.R. 404.1563).
9. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 C.F.R. 404.1520(e)).

(R. 44.)

Plaintiff raises the following arguments on appeal: (1) the substantial evidence in the

administrative record establishes entitlement to and eligibility for the benefits applied for; (2) in the fourth hearing, the ALJ was negligent and unfamiliar with the prior record and refused to comply with the evidentiary directives of the Appeals Council; and (3) the Commissioner's final administrative decision was not based on the substantial evidence of record but rather his own medical judgment. The Commissioner contends that the ALJ's decision is supported by substantial evidence and should be upheld.

## II. DISCUSSION

### A. Standard of Review

A reviewing court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1893(c)(3); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom., Williams v. Shalala, 507 U.S. 924 (1993). "Substantial evidence: means more than "a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). It does not mean a large or considerable amount of evidence, but rather "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.; Morales v. Apfel, 225 F.3d 310, 316 (3d Cir. 2000). Some types of evidence are not "substantial." For example,

> [a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence - particularly certain types of evidence (e.g. that offered by treating physicians) - or if it really constitutes not evidence but mere conclusion.

Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d. Cir. 1983)).

This Court's review of legal issues is plenary. Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir.

2000) (citing Shaudeck v. Comm'r of Social Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999)). "The reviewing court, however, does have a duty to review the evidence in its totality." Stonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (citing Daring v. Heckler, 727 F.2d 64, 70 (3d. Cir. 1984 )). The district court must determine whether the record, as a whole, contains substantial evidence to support the findings of the Commissioner. Shaudeck, 181 F.3d at 431. A court may not displace the choice of an administrative body "between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." N.L.R.B. v. Greensburg Coca-Cola Bottling Co., 40 F.3d 669, 672-78 (3d Cir. 1994) (quoting Univ. Camera Corp v. N.L.R.B., 340 U.S. 474, 488 (1951)). Thus, "where the ALJ's findings of fact are supported by substantial evidence, the [reviewing court] is bound by these findings, even if [it] would have decided the factual inquiry differently." Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). Furthermore, the District Court neither has the ability to weigh the evidence "[n]or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182 (citing Early v. Heckler, 743 F.2d 1002, 1007) (3d Cir. 1984)).

Nonetheless, an ALJ must make specific findings of fact to support his ultimate conclusion. Stewart v. Sec'y of HEW, 714 F.2d 287, 290 (3d Cir. 1983). An ALJ must consider all of the medical evidence in the record and provide adequate explanations for disregarding or rejecting evidence. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999); Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981). The Third Circuit has held that access to the Commissioner's reasoning is essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained
> the weight he has given to obviously probative exhibits, to say that his decision is

>supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (quoting Arnold v. Sec'y of HEW, 567 F.2d 258, 259 (4th Cir. 1977)).  Without access to the ALJ's reasoning, the reviewing court cannot conduct an accurate review of the matter; the court cannot determine whether the evidence was discredited or simply ignored.  Cotter, 642 F.2d at 705; Walton v. Halter, 243 F.3d 703, 710 (3d Cir. 2001).

### B.     The Five Step Analysis for Determining Disability

A claimant's eligibility for benefits is governed by 42 U.S.C. § 1382.  Pursuant to the Social Security Act ("Act"), a claimant is eligible for benefits if he or she meets the income and resource limitations of 42 U.S.C. §§ 1382a and 1382b and demonstrates that she is disabled based on an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  A person is disabled for these purposes only if his physical or mental impairments are "of such severity that he is unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner established a five-step sequential evaluation analysis to determine whether a claimant is disabled.  20 C.F.R. § 416.920.  The first step requires the claimant to establish that he did not engage in substantial gainful activity since the onset of the alleged disability.  20

C.F.R. § 416.920(a). If the claimant did not engage in substantial gainful activity then the analysis continues to the second step, wherein the claimant must prove he suffers a "severe impairment" or "combination of impairments." 20 C.F.R. § 416.920(c). Since the claimant bears the burden of establishing the first two requirements, a failure to meet these two requirements automatically results in a denial of benefits. Bowen v. Yuckert, 482 U.S. 137, 146-47 n.5 (1987).

If the claimant satisfies his initial burdens, he must provide evidence that his impairment equals or exceeds one of the impairments listed in Appendix 1 of the regulations. 20 C.F.R. § 416.920(d). Upon providing such evidence, the claimant is presumed disabled and automatically entitled to disability benefits. Id. If the claimant cannot provide such evidence, the disability analysis continues. The fourth step of the analysis focuses on whether the claimant's residual functional capacity ("RFC") permits him to resume his previous employment. 20 C.F.R. § 416.920(e). If the claimant is found capable to return to his previous line of work, then he is not "disabled" and not entitled to disability benefits. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant cannot resume his previous employment or does not have any past relevant work, the analysis proceeds to step five. 20 C.F.R. § 416.920(f)-(g). At step five, the burden shifts to the Commissioner to demonstrate based on the claimant's RFC, as well as his age, education and past work experience, that the claimant can perform other work that exists in the national economy. 20 C.F.R. §§ 416.920(g), 416.960, 416.963, 416.964 and 416.965. If the Commissioner cannot satisfy this burden, the claimant shall receive social security benefits. Yuckert, 482 U.S. at 146-47 n.5.

## III.   ANALYSIS

Plaintiff argues that the ALJ refused to comply with the Appeals Council's Orders. (Pl. Br.

at 12.)  Plaintiff also argues the Commissioner's final administrative decision is not based on the substantial evidence of the record but rather his own medical judgment.  (Pl. Br. at 12.)  Further, Plaintiff argues that substantial evidence in the administrative record establishes his entitlement to and eligibility for the benefits applied for.  (Pl. Br. at 12.)  Plaintiff does not dispute the ALJ's findings at step one, two, and three of the evaluation, that (1) he had not engaged in substantial gainful activity during the relevant period; (2) he has severe impairments; and (3) his impairments did not meet or medically equal any Listed Impairments.  (R. 44.)  20 C.F.R. §§ 404.1520(b), (c), and (d); 20 C.F.R. Part 404, Subpart P. Appendix 1 (the Listings).  For the reasons set forth below, it is the finding of this Court that Plaintiff's challenges to the ALJ's decision are meritless.

    **A.**  **The ALJ Relied on Substantial Medical Evidence**

Plaintiff argues that the ALJ did not have substantial evidence to support his finding, but rather utilized his own medical judgment.  (Pl. Br. 12.)  In addition, Plaintiff argues that the ALJ used his own judgments and "nonexistent expertise" to reject the testimony at the first hearing from Dr. Mylod.  (Pl.  Br. at 29.)

A doctor's opinion can be rejected by an ALJ if contradictory medical evidence is presented. Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir. 1988).  Dr. Mylod testified that Plaintiff suffered from a Listing 1.05(C) disability, now a Listing 1.04 disability.  (R. 39.)  A Listing 1.04(A) disability exists if the claimant suffers from

> "a disorder of the spine . . . resulting in compromise of a nerve root or the spinal cord with evidence of root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex moss, and if there is involvement in the lower back, positive straight-leg raising test."

20 C.F.R. Pt. 404, Subpt. P, App.1.

The ALJ concluded, based on numerous medical reports, that after Plaintiff's surgery in March 1996, Plaintiff did not satisfy all the elements of Listing 1.04(A) since his surgery in March 1996. (R. 39.) The ALJ references a November 25, 1996 report which concluded negative straight leg raising, normal strength and intact neurological functioning. (R. 39.) The ALJ also references August 29, 1997 and January 23, 1998 examinations which revealed negative straight leg raising tests as well. (R. 39.) The ALJ further explains that in December 1998, Dr. Bagner noted positive straight leg raising; however, the doctor assessed that Plaintiff had no atrophy or motor or sensory abnormalities in the lower extremities. (R. 39.) Thus, the ALJ properly supported his rejection to Dr. Mylod's testimony equating Plaintiff's medical condition with Listing 1.04 by references of substantial contrary medical evidence. Accordingly, the ALJ's decision was supported by "substantial evidence."

### B.  The ALJ Explained the Finding of the Sit/Stand Interval of an Hour

Plaintiff argues that the ALJ failed to explain the finding that the claimant needs to alternate between sitting and standing at hour intervals. (Pl. Br. at 28.) Plaintiff argues that the underlying reason for this finding was the ALJ's rejection of Plaintiff's subjective complaints of pain. (Pl. Br. at 28.)

A reviewing court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1893(c)(3). It does not mean a large or considerable amount of evidence, but rather "such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (quoting Consol. Edison Co., 305 U.S. at 229). State Agency medical consultants are qualified experts in the field of Social Security

disability, and an ALJ is entitled to rely on their assessments when issuing a decision. 20 C.F.R. §§ 404.1512(b)(6) and 404.1513(c). Here, the ALJ's determinations were supported by a physician's report, three State Agency medical consultants, as well as Plaintiff's treating physician.

Additionally, from January 25, 1995 through March 23, 1995, Plaintiff was treated by Prizm Environmental and Occupational Health, Inc. ("Prizm") for bilateral epicondylitis. (R. 163-64, 167-71.) On January 25, 1995, Plaintiff received a Certificate of Fitness from Prizm with a limitation of two hours on the keyboard and one hour off throughout the day. (R. 171.) On March 9, 1995, Plaintiff received a Certificate of Fitness from Prizm which stated that Plaintiff could return to work and begin regular duties with no sitting or standing restrictions. (R. 167.) On September 9, 1997, a State Agency medical consultant assessed that Plaintiff could sit with normal breaks for a total of six hours in an eight-hour work day. (R. 52.) Similarly, on July 7, 1997, another State Agency medical consultant reached the same finding. (R. 85.) Again on February 1, 2001, a State Agency medical consultant concluded that Plaintiff could stand or walk for at least two hours in an eight hour work day and sit with normal breaks for a total of six hours. (R. 494.) In addition, on April 2, 1998, Dr. Shafi, Plaintiff's treating physician, stated in a typed letter that Plaintiff's "pain is worse when . . . sitting for more than an hour in one position." (R. 221.) All seven documents received by two Prizm physicians, three State Agency medical consultants, and Plaintiff's treating physician assess nothing less than hour intervals for Plaintiff. These documents support the ALJ's finding that Plaintiff needs to alternate sitting and standing at hour intervals, not at half hour intervals. Thus, the ALJ's conclusion is based on substantial medical evidence and not on the ALJ's rejection of the Plaintiff's subjective pain.

### C.     Plaintiff's Credibility

An ALJ is "empowered to evaluate the credibility of witnesses." Van Horn v. Schwieker, 717 F.2d 871, 873 (3d Cir. 1983). An ALJ is required to seriously consider a claimant's testimony about the restraints and effects of one's symptoms; however, an ALJ can reject testimony of a claimant if the ALJ provides substantial evidence for that decision. Howard v. Apfel, No. 95-6906, 1998 U.S. Dist. LEXIS 418 (D. Pa. Jan. 20, 1998). Pursuant to 20 C.F.R. 404.1529(c)(4), an ALJ evaluates symptoms, including pain by:

> determin[ing] the extent to which symptoms . . affect your capacity to perform basic work activities. We will consider your statements about the intensity, persistence, and limiting effects of your symptoms, and . . . will evaluate your statements in relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether you are disabled. We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your treating or nontreating source or other persons about how your symptoms affect you.

20 C.F.R. 404.1529(c)(4).

The ALJ concluded that the claimant's allegations of totally disabling pain and limitation were not supported by the objective evidence and therefore cannot be considered wholly credible. (R. 41.)     Several pieces of evidence support this credibility determination.  First, the claimant received six months of unemployment benefits after he stopped working and continued to look for work after these benefits ended. (R. 41.) Second, the claimant also reported pain in the base of his skull which increased when he wore his motorcycle helmet. (R. 41.) However, his testimony that he rode a motorcycle is inconsistent with Plaintiff's statement that sitting for long periods of time increases his back pain. Third, the claimant applied for employment at the Post Office which suggests that he could perform the walking, standing, and sitting requirements that would be involved in such a job. (R. 41.) Fourth, in August of 2002, the claimant reported engaging in activities around the house including mowing the lawn, cleaning the house, and playing with his

dogs. (R. 42.) This too suggests that claimant would be able to engage in work activity. Lastly, progress notes from April 12, 1999, state that claimant had been noncompliant with physical therapy. (R. 42.) According to 20 C.F.R. 404.1530, noncompliance with treatment can lead to a finding of "not disabled." Based on this evidence from medical records and the testimony from Plaintiff himself, the ALJ properly determined that Plaintiff lacked credibility. In addition, the ALJ explained his reasons for not crediting some of the information provided by Plaintiff. Accordingly, the ALJ concluded that Plaintiff was not disabled.

### D. The ALJ's Failure to Comply with the Appeals Council Remand Order Does Not Constitute Reversible Error

Pursuant to 42 U.S.C. § 405(g), "any individual, after any final decision of the Commissioner of Social Security . . . may obtain a review of such decision by a civil action." 42 U.S.C. § 405(g) (2007). This Court's jurisdiction extends only to the Commissioner of Social Security's final decision, the ALJ's final decision, but not to the Appeals Council's remand. Scott v. Astrue, No. 06-2541, 2007 U.S. Dist. LEXIS 42928, at *26 (E.D. Pa. June 12, 2007). In Scott v. Astrue, the plaintiff's application for disability insurance was denied by an ALJ. Id. at *2. The Appeals Council reversed the case returning it to the ALJ with a remand order. At the remand hearing, the ALJ found Scott to be disabled as of April 14, 2004, but not disabled prior to that period. Id. The Appeals Council denied Scott's request for review, rendering the ALJ's decision final. Id. On appeal to the district court, Scott argued that the ALJ's RFC assessment failed to comply with the remand order. Id. at *26. The district court held that it could not review Scott's argument because the court's jurisdiction only extended to the Commissioner's final decision. Id.

Similarly, in this case, Plaintiff argues that the ALJ did not comply with the Appeals Council's remand order instructing the ALJ to "obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base for the pertinent period." (Pl. Br. at 13-14.) Pursuant to 42 U.S.C. § 405(g), this Court's jurisdiction extends only to the Commissioner of Social Security's final decision, which in this case is ALJ Determan's final

decision, not the Appeal Council's remand order. Thus, Plaintiff's argument that the ALJ did not comply with the Appeals Council's remand order is not grounds for overturning the ALJ's decision.

**IV.  CONCLUSION**

For the foregoing reasons, the Court concludes that substantial evidence supports the ALJ's factual findings and thus **affirms** the Commissioner's final decision denying benefits for Plaintiff.

S/ Dennis M. Cavanaugh  
Dennis M. Cavanaugh, U.S.D.J.

Date:       August   7   , 2007  
Orig.:      Clerk  
cc:         Counsel of Record  
            The Honorable Mark Falk, U.S.M.J.  
            File